## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DANA MARIE CIESIELSKI,

               Plaintiff,

    v.

KILOLO KIJAKAZI,

               Defendant.

CIVIL ACTION NO. 3:21-CV-01573

(MEHALCHICK, M.J.)

## MEMORANDUM

This is an action brought under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Dana Marie Ciesielski ("Ciesielski")'s claims for a period of disability and supplemental security income ("SSI") under Title XVI of the Social Security Act. (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be AFFIRMED.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On August 31, 2015, Ciesielski protectively filed an application for Title XVI benefits beginning August 3, 2015. (Doc. 13-2, at 24). The Social Security Administration initially denied Ciesielski's application on December 21, 2015, prompting Ciesielski's request for a hearing, which Administrative Law Judge ("ALJ") Edward Brady held on November 16, 2017. (Doc. 13-2, at 53). In a written opinion dated February 16, 2018, the ALJ determined

that Ciesielski was not disabled and therefore not entitled to the benefits sought. (Doc. 13-3, at 15-31). On October 25, 2019, the Appeals Council granted Ciesielski's request for review, vacated the ALJ's decision, and remanded for further evaluation. (Doc. 13-3, at 35-39). In the remand order, Appeals Council specifically directed the ALJ to: (1) "[g]ive further consideration to [Ciesielski]'s maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations;" and (2) "evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927 and nonexamining source opinion in accordance with the provision of 20 CFR 416.927, and evaluate and explain the weight given to such opinion evidence." (Doc. 13-3, at 38).

On November 9, 2020, a second hearing was held before ALJ Danial Balutis. (Doc. 13-2, at 93). In a written decision dated November 18, 2020, the ALJ determined that Ciesielski was not disabled and therefore not entitled to the benefits sought. (Doc. 13-2, at 19-34). On July 14, 2021, the Appeals Council denied Ciesielski's request for review. (Doc. 13-2, at 2). On September 13, 2021, Ciesielski initiated the instant action. (Doc. 1). The Commissioner responded on November 24, 2021, providing the requisite transcripts from the disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Ciesielski alleging two errors warrant reversal or remand. (Doc. 16; Doc. 21; Doc. 22).

## II.   STANDARD OF REVIEW

In order to receive benefits under Title XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy.[1] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.905(a).

   A. ADMINISTRATIVE REVIEW

   In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are

---

   [1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

- 3 -

consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 416.912(f).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

B. JUDICIAL REVIEW

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ

ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The question before the Court, therefore, is not whether Ciesielski is disabled, but whether the Commissioner's finding that Ciesielski is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## III. **THE ALJ'S DECISION**

In a decision dated November 23, 2020, the ALJ determined that Ciesielski "has not been under a disability, as defined in the Social Security Act, since August 31, 2015, the date the application was filed." (Doc. 13-2, at 34). The ALJ reached this conclusion after

proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 416.920(a).

### A. STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 416.972. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. Here, the ALJ determined Ciesielski "has not engaged in [SGA] since August 31, 2015, the application date." (Doc. 13-2, at 24). Thus, the ALJ's analysis proceeded to step two.

### B. STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment—or combination of impairments—that is severe. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 416.920(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that the medical evidence of record established the presence of the following medically determinable severe impairments: "status-post open reduction internal fixation (ORIF) of the right ankle with non-union, chronic kidney disease stage 2, anxiety, depression, bipolar disorder, attention deficit hyperactivity disorder (ADHD) and obsessive compulsive

disorder (OCD)." (Doc. 13-2, at 24). The ALJ also noted non-severe impairments of: "open wound of right knee, leg, and ankle; venous insufficiency (chronic) (peripheral) and opioid dependence." (Doc. 13-2, at 25).

### C. STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 416.920(a)(4)(iii); 416.925; 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 416.920(d). Otherwise, the ALJ must proceed to the fourth step of the analysis. The ALJ determined that none of Ciesielski's impairments, considered individually or in combination, met or equaled a Listing. (Doc. X). Specifically, the ALJ considered Listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 12.02 (neurocognitive disorders); 12.04 (depressive, bipolar and related disorders); and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. 13-2, at 25-26).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. Ciesielski alleged that her physical impairments limit her ability to stand for both long and short periods of time, lift and carry anything over ten pounds, and walk longer than half a block. (Doc. 13-2, at 28). In addition, Ciesielski reported that her mental impairments make it difficult for her to leave her house, talk to other people, and focus or stay on track. (Doc. 13-2, at 28). The ALJ found that while Ciesielski's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, Ciesielski's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 28). The ALJ then went on to detail Ciesielski's medical records and treatment history. (Doc. 13-2, at 28-33). The ALJ also considered Ciesielski's Global Assessment of Functioning ("GAF") scores that were rendered over the course of her treatment, and gave them little weight. (Doc. 13-2, at 32-33).

Considering all evidence in the record, the ALJ determined that Ciesielski had the RFC "to perform sedentary work as defined in 20 CFR 416.967(a)," subject to the following non-exertional limitations:

> [Ciesielski] can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs but never climb ladders, ropes, or scaffolds. Additionally, she is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work) and she is able to perform simple work-related decisions. She can frequently interact with supervisors, coworkers, and the public. Moreover, she is able to tolerate few changes in a routine work setting defined as occasional changes in routine work setting.

(Doc. 13-2, at 27).

E. STEP FOUR

Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant had, during the relevant period, the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step. 20 C.F.R. § 416.965.

The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed the work or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82-6). "If the claimant can perform his [or her] past relevant work despite his [or her] limitations, he [or she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). Here, the ALJ determined that Ciesielski has no past relevant work. (Doc. 13-2, at 34). Thus, the ALJ proceeded to step five of the sequential analysis.

    F.   <u>STEP FIVE</u>

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 416.960(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, the ALJ made vocational determinations that Ciesielski was 27 years old on the application date, defined as a younger individual age 18-44 by the Regulations. 20 C.F.R. § 416.963. (Doc. 13-2, at 33). The ALJ also noted that Ciesielski "has at least a high school education" as considered in 20 C.F.R. § 416.964. (Doc. 13-2, at 33). The ALJ determined that upon consideration of these factors, Ciesielski's RFC, and the testimony of a vocational expert ("VE"), "there are jobs that exist in significant numbers in the national economy that the claimant can perform." 20 C.F.R. §§ 416.969; 416.969(a). (Doc. 13-2, at 33). The ALJ specifically identified occupations of inspector, final assembler, order clerk, and lens inserter, which are occupations with open positions ranging from 97,260 to 169,120

nationally. (Doc. 13-2, at 34). As a result of this analysis, the ALJ determined that Ciesielski was not disabled and denied Ciesielski's applications for benefits. (Doc. 13-2, at 34).

IV.   **DISCUSSION**

Ciesielski advances two main arguments on appeal. First, Ciesielski asserts that "[t]he ALJ erroneously assigned little weight to the assessment of the consultative psychologist which, if properly credited, would have compelled a finding of disability." (Doc.16, at 6). Second, Ciesielski argues that "[t]he ALJ failed to present all of [Ciesielski]'s limitations to the vocational expert in his hypothetical question, the answer to which did not constitute substantial evidence of work within [Ciesielski]'s capacity." (Doc. 16, at 11). In response, the Commissioner contends that "[t]he record does not reflect an individual with disabling functional limitations, and substantial evidence supports the Commissioner's decision." (Doc. 21, at 30).

A.   THE ALJ DID NOT ERR IN HIS EVALUATION OF OPINION EVIDENCE.

Ciesielski avers that "the ALJ failed to comply with the Appeals Council's remand instructions, and violated the applicable regulations, which required him to consider whether Dr. McNelis' opinion was supported." (Doc. 16, at 8). Ciesielski submits that the ALJ failed to provide an explanation for his rejection of the opinion of Dr. McNelis and that the ALJ should have credited Dr. McNelis's opinion and found Ciesielski disabled as a result. (Doc. 16, at 10-11). Thee Commissioner argues that the ALJ "appropriately discounted Dr. McNelis's opinions of significant functional limitations because they were not consistent with the broader record." (Doc. 21, at 16).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC is defined as that

which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the most that an individual can still do, despite his or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinions of Dr. McNelis.

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 416.927(c); *see also Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about

the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and . . . physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)."[2] SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

For weighing all medical opinions, an ALJ considers the factors enumerated 20 C.F.R. § 416.927(c) (effective for claims filed before March 27, 2017). These factors include: (1) the examining relationship; (2) the treatment relationship, including its length and nature; (3) the supportability of the medical source's opinions; (4) consistency with the record; (5) specialization; and (6) other relevant factors. 20 C.F.R. § 416.927(c)(3) & (4); *see also* SSR 96-6p, 1996 WL 374180 at *2 ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."). An ALJ is entitled generally to credit parts of an opinion without crediting the entire opinion. *See Ward v. Kijakazi*, No. 1:20-CV-1691, 2021 WL 4262460, at *7 (M.D. Pa. Sept. 20, 2021). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. *See e.g., Durden v. Colvin*, 191 F.Supp.3d 429, 455 (M.D. Pa. 2016).

---

[2] SSRs are agency rulings published under the authority of the Commissioner and are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force and effect of the law or regulations but are to be "relied upon as precedents in determining other cases where the facts are basically the same." *Heckler v. Edwards*, 465 U.S. 870, 873, n.3 (1984).

Further, 20 C.F.R. § 416.927(c)(2) requires that the Commissioner "will always give good reasons in [his] notice of determination or decision for the weight [he] gives to [a claimant's] treating source's opinion." *See also Cotter*, 642 F.2d at 704 (Finding the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer*, 186 F.3d at 429 (quoting *Mason*, 994 F.2d at 1066); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). As such, to allow for meaningful judicial review, it is the duty of the ALJ to explain the rationale for the weight afforded. *Plummer*, 186 F.3d at 429; *Burnett*, 220 F.3d at 119.

Here, shortly after Ciesielski filed her application, the state agency arranged for her to be examined by Kristen McNelis, Ph.D. ("Dr. McNelis"), a consultative psychologist. (Doc. 13-7, at 126). On November 24, 2015, Dr. McNelis conducted a mental status examination and submitted a medical source statement of Ciesielski's abilities to do work-related mental activities. (Doc. 13-7, at 126). Dr. McNelis noted that Ciesielski was cooperative and polite throughout the evaluation, but her manner of relating and social skills appeared to be limited. (Doc. 13-7, at 127). Dr. McNelis stated that Ciesielski appeared disheveled and older than her stated age; her motor behavior was lethargic; her thought processes were free of hallucinations, delusions, or paranoia; her affect was flat and mood was congruent; her attention and concentration appeared mildly impaired; her memory skills were intact; her

- 13 -

cognitive function was below average to borderline; and her insight was limited, but her judgment was fair. (Doc. 13-7, at 127-29). Dr. McNelis found that Ciesielski was able to perform simple calculations and complete serial 3s without error, but she was unable to complete simple multiplication or division problems. (Doc. 13-7, at 129). Dr. McNelis diagnosed Ciesielski with unspecified depressive disorder, unspecified anxiety disorder, and unspecified neurocognitive disorder versus unspecified neurodevelopmental disorder. (Doc. 13-7, at 130). In the medical source statement, Dr. McNelis opined that, due to her depression, anxiety, and history of substance abuse, Ciesielski had marked limitations in understanding and remembering simple instructions, carrying out simple and complex instructions, and making judgments on simple and complex work-related decisions. (Doc. 13-7, at 132). In addition, Dr. McNelis opined that Ciesielski's ability to interact appropriately with supervisors, coworkers, and the public were markedly limited, and that Ciesielski's ability to respond to work situations and changes in the routine work setting were extremely limited. (Doc. 13-7, at 133).

In the prior decision by ALJ Brady, he afforded "little weight" to Dr. McNelis' opinion. (Doc. 13-3, at 28). ALJ Brady found that "[t]his assessment is based on a one-time evaluation and relies heavily on [Ciesielski]'s subjective reports. Such marked to extreme limitations are not consistent with or supported by the benign mental exam findings in her treatment records or her level of ongoing mental health treatment." (Doc. 13-3, at 28). In the order vacating and remanding ALJ Brady's decision, the Appeals Council found that "[f]urther evaluation of Dr. McNelis' opinion is needed" because, despite the prior ALJ's finding that Dr. McNelis' opinion was not supported by the medical record, the record indicates that Ciesielski "was hospitalized twice due to suicidal thoughts, high anxiety and

depression, hopeless and helpless feelings, and impaired concentration," and that Leslie

Seiden, M.D., treated Ciesielski for anxiety and panic attacks. (Doc. 13-3, at 37).

On remand, considering the opinion of Dr. McNelis, ALJ Balutis also gave the

opinion little weight. (Doc. 13-2, at 32). The ALJ found:

> [T]his opinion was based on a one time examination of [Ciesielski] and is not
> consistent with the longitudinal treatment records discussed above, which
> consistently reported that while [Ciesielski]'s mood fluctuate, she was
> cooperative, her memory was intact, insight and judgment were fair and intact,
> her thoughts were goal directed and concentration was good. The limitations
> suggested herein appear to overestimate [Ciesielski]'s degree of limitation.
> Although the records clearly show that she has incurred some periods of
> increased symptomatology, overall, her mental examination findings more
> consistently revealed milder to moderate symptoms.

(Doc. 13-2, at 32).

Ciesielski contends that ALJ Balutis "essentially disregarded the remand order of the Appeals

Council," based his decision on erroneous reasoning, and failed to adequately account for the

regulatory factors outlined in 20 C.F.R. § 416.927(c). (Doc. 16, at 8-10; Doc. 22, at 2-3). The

Court disagrees.

In weighing all medical opinions, the Court finds that the ALJ appropriately

considered the factors enumerated 20 C.F.R. § 416.927(c), including Dr. McNelis' non-

examining relationship with Ciesielski and the inconsistency of Dr. Nelis' opinion with the

longitudinal record. 20 C.F.R. § 416.927(c)(3) & (4); *see also* SSR 96-6p, 1996 WL 374180 at

*2. First, although Dr. McNelis did conduct an in-person evaluation of Ciesielski, she is not

a treating source. Dr. McNelis did not have a treatment relationship with Ciesielski. Instead,

Dr. McNelis conducted a one-time evaluation of Ciesielski. A physician who conducts a one-

time examination is not a treating source, and thus, his opinion is not entitled to controlling

weight. *See Thomas v. Kijakazi*, No. 20-CV-847, 2021 WL 2981799, at *5 (W.D. Pa. July 15,

2021) (finding that a one-time consultative examiner is not a treating source, and therefore, his opinion is not entitled to controlling weight). As such, the ALJ was entitled to reject any portion of Dr. McNelis' opinion, so long as he indicates the evidence he rejects and his reasons for discounting that evidence. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001); *Durden*, 191 F.Supp.3d at 455. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence, if it does contain a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 416.927(c).

Next, ALJ Balutis' discussion explains that he discounted Dr. McNelis' medical source statement because it was unsupported by and inconsistent with the longitudinal treatment records. (Doc. 13-2, at 32). Specifically, the ALJ noted that while the treatment records from the relevant period showed that Ciesielski had fluctuating mood, the mental status examinations reflected that Ciesielski was cooperative, her memory was intact, her insight and judgment were fair and intact, her thoughts were goal-directed, and her attention, concentration, and memory were good. (Doc. 13-2, at 32; Doc. 13-3, at 5-6; Doc. 13-7, at 154, 160; Doc. 13-8, at 44, 47, 85, 103-04). The ALJ also noted that Dr. McNelis' findings "seem to overestimate [Ciesielski]'s degree of limitation," because "overall, her mental health examination findings more consistently revealed milder to moderate symptoms." (Doc. 13-2, at 32). The ALJ recognized that "while it is clear [Ciesielski] has mental health impairments, the treatment records would not support more limitations to [Ciesielski]'s cognitive abilities and social interactions, than provided in the above [RFC]." (Doc. 13-2, at 31). Thus, the Court is not persuaded by Ciesielski's argument that the ALJ should have afforded more weight to Dr. McNelis' opinion because the ALJ provided sufficient explanations as to why he afforded little weight to Dr. McNelis' opinion. (Doc. 16, at 6-11).

In addition, the ALJ evaluated Dr. McNelis' opinion in relation to the entire medical record in accordance with the remand order. For example, the ALJ discussed Ciesielski's two hospitalizations prior to the alleged onset date and found that upon discharge, Ciesielski's GAF scores were up to 55, indicating no more than moderate limitations and symptoms. (Doc. 13-2, at 32). The fact that Dr. McNelis' opinion was based on a one-time examination is one of several reasons why the ALJ afforded the opinion of Dr. McNelis little weight. (Doc. 13-2, at 32). Further, the ALJ specifically refers to other mental status examinations of Ciesielski that support his conclusion that the limitations suggested in Dr. McNelis' opinion "appear to overestimate [Ciesielski]'s degree of limitation." (Doc. 13-2, at 32). Rather than entirely rejecting Dr. McNelis' opinion, the ALJ found that "[a]lthough the records clearly show that she has incurred some periods of increased symptomatology, overall, her mental examination findings more consistently revealed milder to moderate symptoms." (Doc. 13-2, at 32).

In sum, the ALJ complied with the Appeals Council's remand order and provided adequate justification as to why he afforded little weight to Dr. McNelis' opinion. It is the right and responsibility of the ALJ to assess the medical record and decide which opinions afford greater weight based on the entirety of the record, and the Court finds that substantial evidence supports the ALJ's decision. Although the ALJ was not required to consider every factor enumerated in 20 C.F.R. § 416.927(c), ALJ Balutis appropriately evaluated Dr. McNelis' opinions in relation to the medical record in his determination to afford the opinion little weight. "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. Ciesielski's argument asks the Court to reweigh the evidence, which the

Court cannot do. *See Messina v. Comm'r of Soc. Sec.*, No. 20-CV-1884, 2021 WL 422444, at *3 (3d Cir. Feb. 8, 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations."); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (stating that the court may not weigh the evidence or substitute our conclusions for those of the ALJ). Because the Court is not permitted to reweigh the evidence, the Court finds that the ALJ did not err in his consideration of Dr. McNelis' opinion.

B. THE ALJ PRESENTED ALL OF THE MEDICALLY SUPPORTED LIMITATIONS TO THE VE AND REASONABLY RELIED ON THE VE'S TESTIMONY.

Ciesielski argues that the ALJ failed to include all of her credibly established limitations in the hypothetical questions presented to the VE. (Doc. 16, at 11; Doc. 22, at 5). As such, Ciesielski avers that the VE's testimony did not constitute substantial evidence that other work existed in the national economy that Ciesielski could perform. (Doc. 16, at 13). In response, the Commissioner explains that the Court should reject Ciesielski's argument because the ALJ included all of Ciesielski's credibly established functional limitations in the RFC and in the hypothetical question posed to the VE. (Doc. 21, at 29).

At step five of the sequential evaluation process, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work by posing a hypothetical question(s) to the VE. *Chrupcala v. Heckler*, 829 F.2d 1269, 176 (3d Cir. 1987); *see also Rutherford*, 399 F.3d at 554; *Ramirez v. Barnhart*, 372 F.3d 546, 552-55 (3d Cir. 2004). "A hypothetical question posed to the [VE] must reflect all of the claimant's impairments that are supported by the record; otherwise the question is deficient and the [VE]'s answer to it cannot be considered substantial evidence." *Chrupcala*, 829 F.2d at 1276; *see also Rutherford*, 399 F.3d at 554; *Ramirez*, 372 F.3d at 552-55. Relatedly, the ALJ

may not substitute his or her own expertise to refute such record evidence. *Plummer*, 186 F.3d at 429. The ALJ, however, is not required to submit to the [VE] every impairment alleged by a claimant. *Rutherford*, 399 F.3d at 554.

Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066; *see also*, 20 C.F.R. 416.929(c)(4). Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect, the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the medical record simply because there is no objective medical evidence to support it. 20 C.F.R. § 416.929(c)(3). "[S]uch references to 'all impairments' encompass only those that are medically established." *Rutherford*, 399 F.3d at 554. Thus, the question posed to the ALJ must accurately convey to the VE all of a claimant's credibly established limitations. *Rutherford*, 399 F.3d at 554 (quoting *Plummer*, 186 F.3d at 431).

During the November 9, 2020, administrative hearing, ALJ Balutis posed one hypothetical question to the VE. (Doc. 13-2, at 121). The ALJ asked if any work is available to a person with Ciesielski's age, education, and background that would be limited to a sedentary exertional level with the following additional restrictions:

> All of the postural movements are occasional with the exception of climbing ladders, ropes, and scaffolds, which is never. For the record, the occasional movements are: climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. This individual's further restricted to perform simple, routine, and repetitive tasks but not at a production rate pace such as what occurs in an assembly line. This hypothetical individual's further restricted to performing simple, routine – simple work-related decisions and would have frequent

contact with supervisors, coworkers, and the public. Finally, there would only be occasional changes in the routine work setting.

(Doc. 13-2, at 121-22).

The VE provided several examples of possible sedentary, unskilled work, including inspector, final assembler, and order clerk. (Doc. 13-2, at 122). Based on the medical record and the VE's testimony, the ALJ found that Ciesielski has no past relevant work, but that there was other work that existed in significant numbers in the national economy that she could perform. (Doc. 13-2, at 33).

Ciesielski argues that "[t]he discrepancy between the RFC finding and the hypothetical is significant, as 'occasional' has a specific meaning under the regulations." (Doc. 16, at 12 (citing SSR 83-10); Doc. 22, at 6-7). In the RFC assessment, the ALJ found that Ciesielski "is able to tolerate few changes in a routine work setting defined as occasional changes in routine setting." (Doc. 13-2, at 27). In the hypothetical question, the ALJ asked the VE to assume an individual who could tolerate only "occasional changes in the routine work setting." (Doc. 13-2, at 121-22). In opposition, the Commissioner correctly maintains that "this is not a case where the RFC is more restrictive than the hypothetical question upon which the [VE] identified jobs that the ALJ relied on," and that the RFC and the hypothetical question are consistent. (Doc. 21, at 27). The word "few" is defined to mean "consisting of or amounting to only a small number" and "at least some but indeterminately small in number." *The Merriam-Webster Dictionary, Few,* https://www.merriam-webster.com/dictionary/few (last visited June 15, 2022). SSR 96-9p defines "occasionally" to mean "occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday." SSR 96-9p, 1996 WL 374185, at *3. Comparing the two definitions, the

definition of "few" closely correlates to the Social Security Administration's definition of occasional. These minor discrepancies do not compel a remand of this matter. *See Rutherford, 399 F.3d at 558*.

The ALJ's hypothetical question was appropriate as it included all of Ciesielski's limitations as supported by the record. *Chrupcala, 829 F.2d at 1276* (stating that a hypothetical question must reflect all of a claimant's impairments that are supported by the record). Likewise, the ALJ appropriately did not include in the hypothetical question limitations from Dr. McNelis' opinion because, as discussed, he found Dr. McNelis' opinion was entitled to only little weight. *Rutherford, 399 F.3d at 554*. Ultimately, because the ALJ included in the hypothetical question to the vocational expert all of Ciesielski's limitations as supported by the record, the VE's testimony that there were other jobs in the national economy that Ciesielski could perform constitutes substantial evidence in support of the ALJ's finding that Ciesielski was not disabled within the meaning of the Act. *See Plummer, 186 F.3d at 431* (providing that a VE's testimony may be relied upon as substantial evidence to support the ALJ's decision, as long as the hypothetical presented to the VE "fairly set[s] forth every credible limitation set forth by the physical evidence.").

Accordingly, the ALJ's decision is supported by substantial evidence.

V.   **CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Ciesielski disability benefits and directs that **FINAL JUDGMENT BE ENTERED** in favor of the Commissioner and against Ciesielski. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: August 18, 2022**                            *s/* *Karoline Mehalchick*
                                                        **KAROLINE MEHALCHICK**
                                                        **Chief United States Magistrate Judge**